**CARY RICHARD BOND, ESQ. (SBN 115467)**
**TIMOTHY J. NASH, ESQ. (SBN 144727)**
**Law Offices of Cary Richard Bond, APC**
**501 West Broadway, Suite 1660**
**San Diego, California 92101**
**Telephone: (619) 230-8700**
**Facsimile: (619) 232-2544**
516.25
Attorneys for Plaintiff Ron Chavez, d.b.a. San Diego Construction Welding

FILED
08 JAN 17 PM 2:26
CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: [signature] DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| United States of America for the Use and Benefit of RON CHAVEZ, D.B.A. SAN DIEGO CONSTRUCTION WELDING,<br><br>Use-Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE WEST, a California corporation; HAR CONSTRUCTION, INC., a California corporation, and DOES 1 through 10, inclusive,<br>Defendants. | Case No. '08 CV 0097 WQH LSP<br><br>COMPLAINT AGAINST MILLER ACT PAYMENT BOND, FOR BREACH OF CONTRACT, COMMON COUNTS |

**GENERAL ALLEGATIONS**

Use Plaintiff RON CHAVEZ, D.B.A. SAN DIEGO CONSTRUCTION WELDING, alleges as follows:

1. The jurisdiction of this Court is based on and conferred by Section 270(b) of Title 40 of the United States Code, as well as the ancillary and pendant jurisdiction of this Court. Specifically, Defendant HAR CONSTRUCTION, INC. and the United States of America, acting by and through the Department of the Navy, Southwest Division NAVFACENGCOM BOICC, entered into a written prime construction contract on or about August 21, 2005 in an amount in excess of $25,000. In conformity with the requirements 40 USC Section 270(b), HAR CONSTRUCTION, INC. purchased,

and INSURANCE COMPANY OF THE WEST issued, a Miller Act Payment Bond.

2. Use Plaintiff RON CHAVEZ, D.B.A. SAN DIEGO CONSTRUCTION WELDING., hereinafter ("SDCW") is a sole proprietorship, which is duly authorized and licensed to do the business discussed herein in the State of California.

3. SDCW is informed and believes and based upon such information and belief alleges that Defendant INSURANCE COMPANY OF THE WEST , hereinafter ("ICW") and DOES 1 through 5 are, and at all times herein mentioned were, corporations duly organized and existing under and by virtue of law and an are authorized to transact business as a surety and issue bonds and undertakings within the State of California.

4. SDCW is informed and believes and based upon such information and belief alleges that Defendant HAR CONSTRUCTION, INC. , hereinafter ("HAR") and DOES 6 through 10, were at all times mentioned in this complaint, and now are corporations and/or individuals duly authorized to transact business in the State of California and in the above-referenced District.

**FIRST CAUSE OF ACTION**
(Action Against Miller Act Payment Bond as to Defendants HAR, ICW, and DOES 1 through 5)

5. SDCW realleges and incorporates herein by reference all allegations contained in Paragraphs 1 through 4, above.

6. SDCW is informed and believes and based upon such information and belief alleges that The United States of America, acting by and through the Department of the Navy, and Defendant HAR entered into a written prime contract on or about August 21, 2005, whereby defendant HAR agreed to furnish all labor and materials necessary to perform all the work required for the construction of the project named P-613 Close Combat Battle Course at MCB Camp Pendleton, CA, Contract No.: N68711-02-D-8053 Task Force Order #0006 ("the Project").

7. As an express requirement of the contract, HAR, as principal, and defendant ICW, as surety, executed and delivered to the Department of the Navy, a Payment Bond dated on or about October 20, 2005, wherein and whereby HAR and ICW bound themselves to assume the payment of

all claims of all persons supplying labor and materials in connection with the work of improvement identified as the Project. (A true and correct copy of this payment bond is attached hereto as Exhibit "1" and incorporated by reference herein.)

8. On July 11, 2006, HAR entered into a written subcontract with SDCW, wherein SDCW agreed to provide labor and materials in conjunction with providing all structural and miscellaneous steel 1/8in or greater on the Project. (A true and correct copy of this subcontract is attached hereto as Exhibit "2" and incorporated by reference herein.)

9. During the course of performance and prosecution of said public work, and under and by virtue of the general contract between HAR and The United States of America, and said subcontract between HAR and SDCW, and between approximately September 30, 2006, and January 26, 2007, SDCW furnished and delivered labor, equipment and materials to the Project and installed the same.

10. Said labor materials and equipment furnished and delivered by Plaintiff SDCW were to be used and were actually incorporated into the construction of the Project.

11. SDCW has sold to and installed for HAR, equipment and materials in the amount of $556,075.00 for which it has received payment of $499,320.00, thereby leaving the sum of $56,755.00 unpaid. In addition, HAR required SDCW to perform Project force account work (work not contemplated by the terms of the subcontract) in an amount totaling $56,003.45. HAR, despite demands from SDCW, owes and refuses to pay SDCW the sum of $112,758.45, exclusive of interest, for SDSCW's project work. SDCW has fully discharged its obligations pursuant to the subcontract agreement between SDCW and HAR.

12. Based upon the failure of HAR to make payment as promised and when due, Plaintiff SDCW notified HAR of its claim, and demanded payment thereof within ninety (90) days after the last equipment and materials were delivered, installed and tested at the Project.

13. By reason of the failure of said defendants to pay to SDCW the sum of $112,758.45 as hereinabove alleged and mentioned, and in accordance with the provisions of the Payment Bond described above and the Miller Act, Defendants HAR and ICW have become indebted to SDCW in

the sum of $112,758.45.

14. HAR and ICW have failed and refused to pay any part of the sum of $112,758.45 now due, owing and unpaid to SDCW.

15. More than ninety (90) days and less than one year have elapsed from the date on which Plaintiff SDCW last furnished labor, equipment and materials and incorporated them into the Project.

16. Based on the foregoing, HAR and ICW are indebted to Plaintiff SDCW in the sum of $112,758.45, together with interest thereon at the maximum rate allowed by law.

**SECOND CAUSE OF ACTION**
(Breach of Contract as to Defendants HAR and DOES 6-10, inclusive)

17. SDCW realleges and incorporates herein by reference all allegations contained in Paragraphs 1 through 16, above.

18. SDCW is informed and believes and thereon alleges that it fully performed all of its duties and obligations pursuant to the terms of the July 11, 2006, written subcontract with HAR, except where excused by the conduct or breaches of HAR.

19. SDCW is informed and believes and thereon alleges that HAR, despite demands from SDCW, owes and refuses to pay SDCW the sum of $112,758.45, exclusive of interest, for SDSCW's project work.

**THIRD CAUSE OF ACTION**
(Quantum Meruit as to Defendants HAR and DOES 6-10, inclusive)

20. SDCW realleges and incorporates herein by reference all allegations contained in Paragraphs 1 through 19, above.

19. Within the last two years, at San Diego, California, SDCW provided services and materials to Defendants at the special request of Defendants, for which Defendants, then and there, promised to Plaintiff the reasonable value of such services and materials.

20. At all times herein mentioned, said services and materials were and are of the

reasonable value of $556,075.00 for which SDCW has received payment of $499,320.00, thereby leaving the sum of $56,755.00 unpaid. In addition, HAR required SDCW to perform Project force account work (work not contemplated by the terms of the subcontract) in an amount totaling $56,003.45. HAR, despite demands from SDCW, owes and refuses to pay SDCW the sum of $112,758.45, exclusive of interest, for SDSCW's project work.

WHEREFORE, Plaintiff prays judgment as follows:

1. For the sum of $112,758.45 together with interest thereon at the rate of ten percent (10%) per annum from and after a date or dates to be determined at time of trial;

2. For reasonable attorneys' fees;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

Dated: January 16, 2008

LAW OFFICES OF CARY RICHARD BOND, A PROF. CORP

Cary Richard Bond, Esq.
Timothy J. Nash, Esq.
Attorneys for Plaintiff RON CHAVEZ, D.B.A. SAN DIEGO CONSTRUCTION WELDING

G:\516\22\ComplaintMillerAct01.010908.wpd

# EXHIBITS

CASE NO.:
6 COMPLAINT ON MILLER ACT PAYMENT BOND

**EXHIBITS TABLE OF CONTENTS**

Exhibit 1.     Payment Bond issued by ICW to HAR, dated 10/20/05. . . . page ex 1


Exhibit 2.     Subcontract between SDCW and HAR, dated 07/11/06. . . . . . page ex 5

04/13/2007 09:27 6196989435 SAN DIEGO WELDING PAGE 10/13

RECEIVED 03/30/2007 09:04 6196989435 SAN DIEGO WELDING
MAR. 30. 2007 9:34AM ROICC CAMP PENDLETON 7607258210 NO. 5483 P. 1/4

BOND NO. 217 17 ..

P...MIUM INCLUDED IN PERFORMANCE BOND

| **PAYMENT BOND** *(See instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)* OCTOBER 20, 2005 | OMB No.: 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405

PRINCIPAL *(Legal name and business address)*

HAR CONSTRUCTION, INC.
3103 MARKET STREET
SAN DIEGO, CA 92102-3231

Joseph - Copy of the payment bond! Bobbi Fax # 619-698-9435

TYPE OF ORGANIZATION ("X" one)

☐ INDIVIDUAL ☐ PARTNERSHIP
☐ JOINT VENTURE ☒ CORPORATION

STATE OF INCORPORATION
CALIFORNIA

SURETY(IES) *(Name(s) and business address(es))*

INSURANCE COMPANY OF THE WEST
11455 EL CAMINO REAL
SAN DIEGO, CA 92130

| PENAL SUM OF BOND | | | |
|---|---|---|---|
| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| 8 | 500 | 000 | 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
| 9/21/2005 | N68711-02-D-8053 TASK ORDER 0006 |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

HAR CONSTRUCTION, INC.

| | 1. | 2. | 3. | |
|---|---|---|---|---|
| SIGNATURE(S) | [signature] (Seal) | (Seal) | (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) *(Typed)* | Hector M. Romero President | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | 1. | 2. |
|---|---|---|
| SIGNATURE(S) | (Seal) | (Seal) |
| NAME(S) *(Typed)* | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | INSURANCE COMPANY OF THE WEST 11455 EL CAMINO REAL, SAN DIEGO, CA 92130 | STATE OF INC. CA | LIABILITY LIMIT $ | Corporate Seal |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) *(Typed)* | 1. JACK G. LUPIEN ATTORNEY-IN-FACT | 2. | | |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR) 53.228(c)

EXHIBIT 1-1

04/13/2007 09:27 6196989435 SAN DIEGO WELDING PAGE 11/13

RECEIVED 03/30/2007 09:04 6196989435 SAN DIEGO WELDING

MAR. 30. 2007 9:34AM ROICC CAMP PENDLETON 7607258210 NO. 5483 P. 2/4

CORPORATE SURETY(IES) *(Continued)*

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) *(Typed)* | 1. | 2. | | |

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

No. 0001354

**ICW GROUP**
**Power of Attorney**
**Insurance Company of the West**
**The Explorer Insurance Company** **Independence Casualty and Surety Company**

KNOW ALL MEN BY THESE PRESENTS: That Insurance Company of the West, a Corporation duly organized under the laws of the State of California, The Explorer Insurance Company, a Corporation duly organized under the laws of the State of Arizona, and Independence Casualty and Surety Company, a Corporation duly organized under the laws of the State of Texas, (collectively referred to as the "Companies"), do hereby appoint

**DALE G. HARSHAW, CAROLYN M. KERL, JACK G. LUPIEN, JOHN C. STARICH, TARA BACON, GEOFFREY SHELTON**

their true and lawful Attorney(s)-in-Fact with authority to date, execute, sign, seal, and deliver on behalf of the Companies, fidelity and surety bonds, undertakings, and other similar contracts of suretyship, and any related documents.

In witness whereof, the Companies have caused these presents to be executed by its duly authorized officers this 16th day of January, 2001.

John H. Craig, Assistant Secretary

**INSURANCE COMPANY OF THE WEST**
**THE EXPLORER INSURANCE COMPANY**
**INDEPENDENCE CASUALTY AND SURETY COMPANY**

John L. Hannum, Executive Vice President

State of California }
County of San Diego } ss.

On December 5, 2003, before me, Mary Cobb, Notary Public, personally appeared John L. Hannum and John H. Craig, personally known to me to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument, the entity upon behalf of which the persons acted, executed the instrument.

MARY COBB
COMM. #1321341
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
SEPTEMBER 20, 2005

Witness my hand and official seal.

Mary Cobb, Notary Public

RESOLUTIONS

This Power of Attorney is granted and is signed, sealed and notarized with facsimile signatures and seals under authority of the following resolutions adopted by the respective Boards of Directors of each of the Companies:

"RESOLVED: That the President, an Executive or Senior Vice President of the Company, together with the Secretary or any Assistant Secretary, are hereby authorized to execute Powers of Attorney appointing the person(s) named as Attorney(s)-in-Fact to date, execute, sign, seal, and deliver on behalf of the Company, fidelity and surety bonds, undertakings, and other similar contracts of suretyship, and any related documents.

RESOLVED FURTHER: That the signatures of the officers making the appointments, and the signature of any officer certifying the validity and current status of the appointment, may be facsimile representations of those signatures; and the signature and seal of any notary, and the seal of the Company, may be facsimile representations of those signatures and seals, and such facsimile representations shall have the same force and effect as if manually affixed. The facsimile representations referred to herein may be affixed by stamping, printing, typing, or photocopying."

CERTIFICATE

I, the undersigned, Assistant Secretary of Insurance Company of the West, The Explorer Insurance Company, and Independence Casualty and Surety Company, do hereby certify that the foregoing Power of Attorney is in full force and effect, and has not been revoked, and that the above resolutions were duly adopted by the respective Boards of Directors of the Companies, and are now in full force.

IN WITNESS WHEREOF, I have set my hand this 20TH day of OCTOBER, 2005

John H. Craig, Assistant Secretary

To verify the authenticity of this Power of Attorney you may call 1-800-877-1111 and ask for the Surety Division. Please refer to the Power of Attorney Number, the above named individual(s) and details of the bond to which the power is attached. For information or filing claims, please contact Surety Claims, ICW Group, 11455 El Camino Real, San Diego, CA 92130-2045 or call (858) 350-2400.

1-3

**I.C.W. GROUP**
Insurance Company of The West
The Explorer Insurance Company
Independence Casualty and Surety Company
11455 El Camino Real, San Diego, CA 92130-2045
P.O. BOX 85563, San Diego, CA 92186-5563
(858) 350-2400 FAX (858) 350-2707
www.icwgroup.com

Bond Number: 217 17 33

# Terrorism Risk Rider

This rider addresses the requirements of the Terrorism Risk Insurance Act of 2002.

In accordance with the above Act, we are providing this disclosure notice for all bonds on which one or more of the above identified companies is a surety.

Coverage for certified acts of terrorism is included in the attached bond and will be partially reimbursed by the United States under a formula established by the Act. The United States will pay 90% of covered terrorism losses in excess of a statutory established deductible to the insurance company issuing the bond.

In no way will the payment for loss on this bond exceed the limit of liability under this bond. This rider does not provide coverage for any loss that would otherwise be excluded by the terms of this bond.

The portion of the premium, for this bond, attributable to coverage for certified acts of terrorism under the Act is One Dollar ($1.00).

**Important Notice: The cost of terrorism coverage is subject to change on any bond that premium is charged annually.**

1 – 4

SUBCONTRACT NO. CBC-SUB00003

## SUBCONTRACT

**Long Form Subcontract Between General Contractor & Subcontractor**

This Subcontract is entered into on **July 11, 2006** in San Diego County, California by and between **HAR Construction, Inc.** ("Contractor"), with its principal office at **3103 Market Street, San Diego, CA 92102** and **San Diego Construction Welding** ("Subcontractor") with its principal office at **1167 Sweetwater Lane, Spring Valley, CA 91977.**

Contractor has entered into a contract with the following Owner:

**Department of the Navy**
**Southwest Division**
**Naval Facilities Engineering Command**
**1220 Pacific Highway**
**San Diego, CA 91132-5190**

To perform certain construction work identified as:

*Contract No: N68711-02-D-8053 Task Order #0006*
*Project Name: P-613 Close Combat Battle Course at MCB Camp Pendleton, CA*

This Subcontract has important legal and insurance consequences. Consultation with an attorney and insurance consultant is encouraged with respect to its completion or modification.

EXHIBIT 2-1

Initials HAR Const., Inc. SD Const. Welding

ARTICLE 1

SUBCONTRACT PRICE

1.1 As full compensation for satisfactory performance of the Subcontract. Contractor agrees to pay Subcontractor in the manner described below, subject to all provisions of the Subcontract: (a) the firm fixed-price of Five Hundred Forty-Four Thousand dollars, ($544,000.00) subject to additions and deductions as provided for in the Subcontract: and/or (b) unit prices in accordance with the attached unit prices and estimated quantities: and/or (c) time and material rates and prices in accordance with the attached Labor and Material Costs: and/or (d) other, as identified in an attachment.

The firm fixed-price, unit prices, time and material rates and prices and/or other identified manner of payment are referred to as the "Subcontract Price".

ARTICLE 2

SUBCONTRACT DOCUMENTS

2.1 The Subcontract Documents, in order of precedence, consist of the following:

2.1.1 The executed Subcontract between Contractor and Subcontractor, including Attachment No. 1

2.1.2 The Contract, consisting of the entire and integrated Agreement between Owner and Contractor, as more particularly though not exclusively specified in the General, Special, Supplementary and other Conditions, Drawings, Specifications, Addenda, reference standards or provisions of any nature.

2.2 Subcontractor certifies and agrees that it is fully familiar with all of the terms, conditions and obligations of the Subcontract Documents, the location of the job site, and the conditions under which the work is to be performed, and that it enters into this Subcontract based upon its investigation of all such matters and is in no way relying upon any opinions or representations of Contractor. It is further agreed that the Contract is incorporated into this Subcontract with the same force and effect as if it was set forth in full, and that Subcontractor and its subcontractors are bound by all terms of the Contract as they relate in any way, directly or indirectly, to the work covered by this Subcontract. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Contract. The Contract is defined above and includes but is not limited to the following documents:

all required government forms and reports

2.3 Upon written request by Subcontractor, Contractor shall provide to Subcontractor at Subcontractor's expense one copy of all portions of the Contract in the Contractor's possession. However, neither this article nor any other shall obligate Contractor to obtain for Subcontractor copies of any portion of the Contract not in the possession of Contractor, and Subcontractor shall not be excused from performance of its work because it does not have such documents. Upon written request by its subcontractors and suppliers, Subcontractor similarly shall make one copy of applicable portions of the Subcontract Documents available to its subcontractors and suppliers. Nothing shall prohibit Subcontractor from obtaining a copy of the executed Contract from Contractor at any time after the Subcontract is executed.

2.4 Nothing in the Subcontract shall be construed to create a contractual relationship between persons or entities other than Contractor and Subcontractor.

ARTICLE 3

SCOPE OF SUBCONTRACT WORK

3.1 Independent Contractor – Subcontractor shall provide all labor, materials, equipment and services necessary or incidental to perform its work as an "independent contractor," in accordance with the Subcontract Documents.

3.2 Subcontract Work – Subcontractor shall perform the following scope of work:

Subcontractor shall provide all equipment, labor, and materials necessary for all Structural and Miscellaneous Steel 1/8" and greater in accordance with Specification Section 05120, Metal Fabrications in accordance with Specification Section 05500; and further is accountable and responsible for the completion of "It's Own Scope of Work/Trade, As-Its Relates Only" excluding all non-ferrous metals on project drawing sheet number; T-1, G-101, G-102, G-103, C-001, C-002, C-003, C-004, C-005, C-006, C-007, C-008, C-009, C-010, C-011, C-012, C-013, C-014, C-015, C-016, C-017, C-018, C-019, C-020, C-021, C-022, C-023, C-024, C-025, C-026, C-027, C-028, C-029, C-030, A0.1, A2A1, A2B1, A2B2, A2C1, A2C2, A2D1, A2D2, A2E1, A2F1, A2G1, A2G2, A2H1, A2H2, A2I1, A2I2, A2J1, A2J2, A2K1, A2K2, A2L1, A2M1, A2M2, A2M3, A2M4, ASP1, A2Q1, A2R1, A2R2, A2S1, A2S2, A2T1, A2T2, A2U1, A2A2, A2U3, A2U4, A2U5, A2U6, A9.1, A9.2, A9.3, S1.1, S1.2, S1.3, S2A1, S2B1, S2C1, S2D1, S2E1, S2F1, S2G1, S2H1, S2I1, S2J1, S2K1, S2L1, S2M1, S2M2, S2P1, S2Q1, S2R1, S2S1, ~~S2T1, S2U1, S2U2, S2U3, S4.1, S4.2, S4.3, S4.4, S4.5, S4.6, S4.7, E-001, E-002, E-003, E-004, E-005, E-006, E-007, E-008, E-009, E-010, E-~~011, E-012, E-013, E-014, E-015, E-016, E-017, E-018, E-019, E-020, E-021, E-022, E-023, E-024, E-025, E-026, E-027, E-028, E-029, E-030, E-031, E-032, E-033, E-034, E-035, E-036, E-037, E-038, E-039, E-040; to be accomplished by utilizing industry principals, methods, standards and codes and implement all necessary safety devices for employees, safety plans, Work Restrictions in accordance with specification section 01140, Construction Schedule in accordance with specification section 01323, Submittal Procedures in accordance with specification section 01330, Quality Control in accordance with specification section 01450, Closeout Procedures in accordance with specification section 01770, as required by Owner for own scope of work per Contract Number N68711-02-D-8053 Task Order Number 0006 Between Department of the Navy Southwest Division Naval Facilities Engineering Command and HAR Construction, Inc. including but not limited to all requirements noted on all Contract Plans (dated 6-15-06), Contract Specifications (dated 6-15-06), and Contract RFP.

3.3 Temporary Services – Contractor will provide to Subcontractor the following temporary services at the project site during the performance of this Subcontract at no charge to Subcontractor: and *Temporary Utilities as provided by "OWNER" (i.e. water, electricity)*

2-2

Initials ________ HAR Const., Inc. ________ SD Const. Welding

Subcontractor will provide, at its own expense, all other necessary temporary services for the completion of its work.

**ARTICLE 4**

SURETY BONDING

4.1 Copy of Contractor Bonds – Subcontractor is entitled to receive from Contractor, upon written request, copies of any payment and performance bonds furnished by Contractor for the project.

4.2 Subcontractor Bonds – Subcontractor surety bond requirements, if any, are as follows:

**Subcontractor Performance And Payment Bond:**

☐ *Required* ☒ *Not Required*

4.2.1 If a performance or payment bond, or both, are required of Subcontractor, such bonds shall name Contractor as obligee, be in the full amount of the Subcontractor Price, and shall be in a form and by a surety acceptable to Contractor. The premiums for such bonds are included in the Subcontract Price.

4.2.2 In the event Subcontractor shall fail to provide any required bonds within ten (10) days of Contractor's written notification to do so, Contractor may terminate this Subcontract for cause. All costs and expenses incurred by Contractor as a result of such a termination shall be paid by Subcontractor in accordance with the termination for cause article of the Subcontract.

4.2.3 No change, directive, clarification or communication regarding this Subcontract, whether made in the manner specified in the Subcontract or not, shall release or exonerate, in whole or in part, any surety on any bond given in connection with this Subcontract and neither Owner nor Contractor shall be under any obligation to notify the surety or sureties of any change, directive, clarification or communication with Subcontractor.

**ARTICLE 5**

PERFORMANCE OF WORK

5.1 Schedule of Work – Subcontractor may provide Contractor with scheduling information it proposes for its work. If the information is provided ten (10) days before Contractor is required to submit the schedule to Owner or to proceed with the work, Contractor will consult with Subcontractor regarding such information and, if possible, incorporate the same into the schedule to Owner.

5.1.1 Contractor shall prepare the schedule for performance of the Contract and Subcontract ("progress schedule") and may revise and update the progress schedule as the work progresses. It shall be Subcontractor's obligation to conform to the progress schedule, as updated by Contractor. Subcontractor shall prepare and obtain approval as required by the Contract for all shop drawings, details, samples; shall perform any required Subcontractor testing; and do all other things necessary and incidental to the prosecution of the Subcontract in order to comply with the progress schedule. Subcontractor shall coordinate the work covered by this Subcontract with Contractor and all other subcontractors with whom Subcontractor must interface for the proper and timely completion of Subcontractor's work. Contractor shall have the right to decide the time and order in which the various portions of the work shall be installed, the priority of the work of other subcontractors, and, in general, all matters representing the timely and orderly performance of the work of Subcontractor on the project.

5.1.2 Contractor shall have the right to determine and, if necessary, change the time, order and priority in which the various portions of the work shall be performed and all other matters relative to the timely and orderly performance of Subcontractor's work. Subcontractor shall be reasonably notified of all subsequent changes and additional details to the progress schedule. Both Contractor and Subcontractor shall be bound by the updated progress schedule.

5.2 Subcontract Performance – Subcontractor shall use its best care, skill and diligence in supervising, directing and performing its work. Subcontractor shall have responsibility and control over the performance of its work, including the construction methods, techniques, means and sequences for coordinating and completing the various portions of its work.

5.3 Use of Contractor's Equipment – Subcontractor, its agents, employees, subcontractors or suppliers shall use Contractor's equipment only with the express written permission of Contractor's designated representative and in accordance with Contractor's terms and conditions for such use.

5.4 Time is of the Essence – Both parties mutually agree to ensure the performance of their respective work and the work of their subcontractors and suppliers so that the entire project may be completed in accordance with the Contract and the updated progress schedule.

5.4.1 It is understood and agreed that time is and shall be considered the essence of this entire Subcontract Agreement and that a delay in the performance of the Subcontract Agreement beyond the time allowed thereto will cause damages to CONTRACTOR which are not subject to reasonable calculation at this time with any degree of certainty because of the nature of the business engaged by CONTRACTOR, and that in *The event SUBCONTRACTOR shall fail in the performance and completion of its work within the time provided herein, SUBCONTRACTOR shall pay to CONTRACTOR as all offset for such damages, expenses and charges incurred or to be incurred or expended by CONTRACTOR, and not as a penalty, the sum of $2,572.00 per day for every day in excess of the time allowed for performance:* provided, however, that SUBCONTRACTOR shall be excused for delays resulting from circumstances beyond its control including shortages of material, acts of God, delays caused solely by orders of the Government offices or agencies, fires, unusual delays in transportation, unavoidable casualties, and delays occasioned solely by the acts of CONTRACTOR. SUBCONTRACTOR agrees that all such delays will be documented to the CONTRACTOR in writing, within ten (10) working days after occurrences. Delays due to strikes, lockouts, and work stoppage are not circumstances beyond the control of the SUBCONTRACTOR and delays occasioned by such will not be excused.

5.4.2 Should SUBCONTRACTOR be unable to meet any work schedule for any phase of the work noted above, CONTRACTOR may at his option and at his sole discretion upon twenty-four (24) hours notice to SUBCONTRACTOR, declare the contract in default, terminate such contract and employ its own other forces or another subcontractor of the CONTRACTORS choice to complete any unfinished work then remaining under this Subcontract Agreement. Such termination and subsequent employment shall be without prejudice to any other remedy CONTRACTOR may have under this contract or by virtue of law.

2-3

Initials HAR Const., Inc. SD Const. Welding

5.4.3 No allowance of an extension of time, for any cause whatever, shall be claimed by the SUBCONTRACTOR or be made by it, unless the SUBCONTRACTOR shall have made written request upon the CONTRACTOR for such extension within forty-eight hours after the cause for such extension occurred and unless the CONTRACTOR and SUBCONTRACTOR have agreed in writing upon the allowance of additional time to be made. If such extension of time is requested as an aforesaid and CONTRACTOR and SUBCONTRACTOR cannot agree there upon, the Owner's Representative shall determine by certificate in writing what, if any, extension of time shall be allowed.

5.4.4 No allowance of an extension of time shall in any event be made to the SUBCONTRACTOR for delay by the SUBCONTRACTOR in preparing drawings or material submittals or in securing approval of the Owner's Representative thereto when such drawings or submittals are not properly prepared or when the SUBCONTRACTOR by the exercise of reasonable diligence and judgment could have anticipated and avoided the delay. If the Owner, with or without cause shall terminate the General Contract or shall stop or suspend work under the General Contract, or if Owner shall fail to pay when due any sum payable under the General Contract, CONTRACTOR may order SUBCONTRACTOR to stop or suspend work hereunder, and CONTRACTOR shall be liable to SUBCONTRACTOR for any such stoppage or suspension only if and to the extent that Owner shall be liable to CONTRACTOR therefore, CONTRACTOR shall pay to SUBCONTRACTOR the value of work that SUBCONTRACTOR has completed before the work was stopped or suspended but only to the extent that Owner shall have paid CONTRACTOR for such work of SUBCONTRACTOR.

## ARTICLE 6

SUBCONTRACT INTERPRETATION

6.1 **Inconsistencies and Omissions** – Should inconsistencies or omissions appear in the Contract, it shall be the duty of Subcontractor to so notify Contractor in writing within three (3) working days of Subcontractor's discovery. Upon receipt of such notice, Contractor shall inform Subcontractor as to the measures to be taken and Subcontractor shall comply with Contractor's instructions. If Subcontractor performs work knowing it to be contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations without notice to Contractor and advance approval by appropriate authorities, including Contractor, then Subcontractor shall assume full responsibility for such work and shall bear all associated costs, charges, fees and expenses necessarily incurred to remedy the violation(s).

6.2 **Disputes Over Responsibility For Performance** - Subcontractor agrees that in the event a dispute should occur between Subcontractor and another subcontractor or Contractor as to who has the responsibility to perform a particular item of work or repair damage to any particular item of work, the determination of who shall perform the work shall be made by Contractor.

6.3 **Law and Effect** – The Subcontract shall be governed by the law of the State in which the project is located.

6.4 **Sever.Ability and Waiver** – The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of the Subcontract, or to exercise any right provided to it, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right with respect to further performance.

6.5 **Recoverable Fees and Costs** – Should either party institute suit or demand arbitration to enforce any of the provisions of the Subcontract, to protect its interests in any manner arising under the Subcontract, or to recover on a surety bond furnished by a party to the Subcontract, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs, charges, and expenses (including expert fees and testing) expended or incurred.

6.6 **Titles** – The titles given to the Articles and paragraphs of the Subcontract, and the order of their placement, are for ease of reference only and shall not be relied upon or cited for any other purpose.

6.7 **Entire Agreement** – The Subcontract is solely for the benefit of the signatories and represents the entire and integrated agreement between the parties and, unless specifically stated otherwise, supersedes all prior negotiations, representations or agreements, either written or oral.

6.8 **Waiver of Any Breach** – Waiver of any breach, alleged breach, provision, covenant or condition of the Subcontract by Contractor shall not be construed as a waiver of the same or any other provision of the Subcontract on any other occasion, nor shall such waiver serve as an estoppel of any other right Contractor may have. Should any provision in the Subcontract, or its attachments, be held or declared void or invalid, all other provisions shall remain in full force and effect.

## ARTICLE 7

CONTRACTOR'S OBLIGATIONS

7.1 **Authorized Representative** – Contractor shall designate one or more persons who shall be Contractor's authorized representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) Subcontractor shall look to for instructions, orders and/or directions, except in an emergency.

7.2 **Lay Down Areas** – If available. Contractor shall allocate to Subcontractor area(s) for Subcontractor's material and equipment during performance of the Subcontract.

7.3 **Timely Communications** – Contractor shall, with reasonable promptness, transmit to the appropriate parties all submittals, transmittals and written approvals relating to Subcontractor's work. Communications by and with Subcontractor's subcontractors and suppliers shall be through Subcontractor.

7.4 **Back Charges For Services Rendered or Materials Furnished** – Contractor agrees that back charges for services rendered or materials furnished to Subcontractor shall not be valid unless Contractor gives Subcontractor written notice prior to the furnishing of the services and/or materials except in an emergency affecting the safety of persons or property.

7.4.1 If requested in writing by Subcontractor, Contractor shall provide written compilations of the charges relating to such services or materials by the last day of the month following that in which the services are rendered or materials are furnished.

7.5 **Layout Responsibility and Levels** – Contractor shall establish principal axis lines and elevations of the structures and site. Subcontractor shall layout and be strictly responsible for the accuracy of Subcontractor's work and for any loss or damage to Contractor or others by reason of Subcontractor's failure to set out or perform its work correctly. Subcontractor shall exercise prudence so that the actual final conditions and details of its work shall result in alignment of finish surfaces.

2-4

*Initials* HAR Const., Inc. SD Const. Welding

7.6 Owner Ability to Pay – Subcontractor shall have the right to review with Contractor all information that Contractor has obtained relative to Owner's financial ability to pay for the Contract work.

## ARTICLE 8

### SUBCONTRACTOR'S OBLIGATIONS

8.1 Responsibilities - Subcontractor shall furnish all labor, materials, equipment and services necessary or incidental to perform its work in accordance with the Subcontract Documents. If requested by Contractor, Subcontractor shall provide to Contractor a list of its proposed subcontractors and suppliers.

8.2 Compliance with Laws, Rules, Ordinances and Regulations – Subcontractor shall, at its sole cost and expense, and without increase in the Subcontract Price, comply with all laws, rules, ordinances and regulations of all governing bodies having jurisdiction over the work, pay all manufacturers' taxes, sales taxes, use taxes, and all federal and state taxes, insurance and contribution for Social Security and unemployment which are measured by wages, salaries or other remunerations paid to Subcontractor's employees, whether levied under existing or subsequently enacted laws, rules or regulations.

8.2.1 Subcontractor shall give adequate notices to all required parties pertaining to Subcontractor's work and secure and pay for all permits, fees, licenses, assessments, and inspections necessary to complete its work in accordance with the Subcontract documents.

8.2.2 Subcontractor shall be compensated for additional costs resulting from laws, ordinances, rules, regulations and taxes enacted after the date of the Contract only to the extent such additional costs are paid to Contractor by Owner.

8.3 Site Visitation – Subcontractor acknowledges that it has visited the project site and visually inspected the general and local conditions which could affect its work. Any failure of Subcontractor to reasonably ascertain, from a visual inspection of the site, the general and local conditions which could affect its work will not relieve Subcontractor from its responsibility to properly complete its work without change in the Subcontract Price.

8.4 Shop Drawings, Samples, Product Data and Manufacturers' Literature – Subcontractor shall promptly submit to Contractor for approval all shop drawings, samples, product data, manufacturers' literature and similar submittals required by the Contract. Subcontractor shall be responsible to Contractor for the accuracy and conformity of its submittals to the Contract requirements. Subcontractor shall prepare and deliver its submittals to Contractor in a manner consistent with the progress schedule and in such time and sequence so as not to delay Contractor or others in the performance of the Contract work. The approval of any Subcontractor submittal shall not be deemed to authorize deviations, substitutions or changes in the requirements of the Subcontract Documents unless express written approval is obtained from Contractor and Owner authorizing such deviation, substitution or change. In the event the Contract does not contain submittal requirements pertaining to Subcontractor's work, Subcontractor agrees upon request to submit to Contractor in a timely fashion for approval any shop drawings, samples, product data, manufacturers' literature or similar submittals as may reasonably be required.

8.4.1 Contractor, Owner and Architect are entitled to rely on the accuracy and completeness of any professional certifications required by the Subcontract Documents concerning the performance criteria of systems, equipment or materials, including all calculations and any governing performance requirements.

8.5 Coordination and Cooperation – Subcontractor shall: (a) cooperate with Contractor and all others whose work may interface with Subcontractor's work; (b) specifically note and immediately notify Contractor of any interference with Subcontractor's work; and (c) participate in the preparation of coordination drawings and work schedules involving Subcontractor's work.

8.6 Authorized Representative – Subcontractor shall designate in writing one or more competent contractor-approved persons who shall be the authorized Subcontractor representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) to whom Contractor shall issue instructions, orders or directions, except in an emergency.

8.7 Communications – Subcontractor communications by and with Owner, Architect, separate contractors and/or other subcontractors and suppliers of Contractor, regardless of tier, shall be through Contractor.

8.8 Tests, Inspections and Approvals – Subcontractor shall coordinate and notify Contractor of all required tests, inspections and approvals of Subcontractor's work so as not to delay the performance of the work. Subcontractor shall schedule and provide proper written notice to all required parties of such tests, inspections and approvals.

8.9 Workmanship – Every part of Subcontractor's work shall be executed in accordance with the Subcontract Documents in a workmanlike manner. All materials needed by Subcontractor shall be furnished in sufficient quantities to facilitate the proper and expeditious execution of the work, and shall be new except such materials as may be expressly provided in the Subcontract Documents to be otherwise.

8.10 Materials or Equipment Furnished by Others – In the event the scope of Subcontractor's work includes installation of materials or equipment furnished by others, it shall be the responsibility of Subcontractor to inventory, examine, store and install the items, with such skill and care as to ensure a satisfactory and proper installation. Subcontractor shall promptly notify Contractor in writing of any defective materials or equipment.

8.11 Substitutions – No substitutions shall be made by Subcontractor unless permitted in the Subcontract Documents and only then upon Subcontractor first receiving all approvals required under the Subcontract Documents for substitutions. If Subcontractor initiates a substitution, deviation or change in the work which affects the scope of the work or the expense of other trades, Subcontractor shall be liable for all resulting expenses.

8.12 Warranty – Subcontractor warrants all materials and workmanship and agrees to replace at it sole cost and expense, and to the satisfaction of Contractor, any materials that are defective or improperly installed, and indemnifies Contractor from and against any liability, loss or damage arising from or relating to such materials and installation through the period of Subcontractor's performance and for a period of one year from completion of the Contract. If the period of warranty is specified in excess of one year by the Contract, Subcontractor shall be bound for the longer period specified.

8.13 Uncovering of Work – If required in writing by Contractor, Subcontractor must uncover any portion of its work which has been covered. All costs associated with the uncovering and related work shall be borne as follows: (a) If the work was covered in violation of the Subcontract Documents or contrary to a written directive issued to Subcontractor by Contractor, the uncovering, any corrective work and restoration shall be at Subcontractor's expense. (b) If the work was not covered in violation of the Subcontract Documents or contrary to a written directive issued to Subcontractor by Contractor, the Subcontract shall be adjusted by change order for all costs of uncovering and restoring any work which

2-5

Initials ______ HAR Const., Inc. ______ SD Const. Welding

proves to be installed in accordance with the Subcontract Documents. (c) If any uncovered work does not comply with the Subcontract Documents and Subcontractor is responsible for the nonconforming condition, Subcontractor shall be responsible for all costs of uncovering, correcting and restoring the work so as to make it conform to the Subcontract Documents.

8.14 Correction of Work – Subcontractor is required to correct in a timely fashion any of its work rejected by Contractor or Owner for failing to comply with the Subcontract documents whether observed prior to the commencement of the warranty period(s) or during the warranty period(s). Subcontractor shall correct at its own cost and bear the expense of additional services for any nonconforming work for which it is responsible, and shall remain responsible even after the warranty period for fraud, misrepresentation or latent defects.

8.15 Cleanup – Subcontractor shall follow Contractor's cleanup directions, and: (a) at all times keep the building and premises free from debris resulting from Subcontractor's work; (b) broom or rake clean each work area prior to discontinuing work in each area; and (c) Subcontractor's work shall not be considered complete until Subcontractor removes from the site all temporary structures, debris and waste incident to its operation and cleans all surfaces, fixtures, equipment, etc., relative to the performance of its work.

If Subcontractor fails to immediately commence compliance with the above cleanup duties after written notification from Contractor of non-compliance, Contractor may implement appropriate cleanup measures without further notice and deduct the resulting costs from any amounts due or to become due Subcontractor under the Subcontract.

8.16 Safety – Subcontractor is responsible for prevention of accidents arising from or relating to its work. Subcontractor shall comply fully with all federal, state and local laws, orders, citations, rules, regulations, standards and statutes affecting or relating to the Subcontract or its performance. Subcontractor shall comply with the accident prevention and safety program of Owner and Contractor. Establishment of a safety program by Contractor shall not relieve Subcontractor of its safety responsibilities. Subcontractor shall establish its own safety program implementing safety measures, policies and standards conforming to those required by governmental authorities having jurisdiction and by Contractor and Owner. Subcontractor shall notify Contractor immediately following an accident and promptly confirm the notice in writing. A detailed written report shall be furnished to Contractor. Subcontractor shall indemnify and hold Contractor harmless from all fines, penalties or costs of abatement imposed on Contractor as a result of safety violations caused by Subcontractor's failure to comply with applicable safety requirements. Subcontractor shall notify Contractor of any unsafe condition it discovers or observes and shall stop work until informed by Contractor that it may resume work.

8.16.1 Should Subcontractor encounter any hazardous substances at the site which are potentially harmful to persons or property, Subcontractor shall take all steps required by the Subcontract Documents and by law to protect persons and property from injury or damage, including stopping Subcontractor's work in the affected area(s) and promptly notifying Contractor in writing of the conditions encountered at the site. Should Subcontractor be required to stop work in any area of the project as a result of hazardous substances located at the site, Subcontractor shall not resume work in the affected area(s) until the hazardous substances have been removed or made harmless, all necessary approvals to resume work are obtained and Contractor gives Subcontractor written direction to resume work.

8.16.2 All safety sheets, plans, submittals or other such documents required by law or the Subcontract Documents pertaining to materials or substances used or consumed in the performance of Subcontractor's work shall be submitted to Contractor by Subcontractor. Any such safety sheets, plans or submittals obtained by Contractor from other subcontractors or sources shall be made available to Subcontractor by Contractor.

8.17 Delegation or Subcontracting of Duties – Subcontractor is prohibited from delegating, transferring, conveying, subcontracting, relinquishing or otherwise disposing of the whole or any part of its duties under this Subcontract without the prior written approval of Contractor, which shall not be unreasonably withheld. Lower-tier subcontractors approved by Contractor on or before the effective date of the Subcontract may be listed below:

________________ ________________ ________________

Subcontractor shall incorporate all terms of this Subcontract in any subcontracts or purchase orders with its subcontractors and suppliers.

8.18 Duty to Proceed – In the event of any dispute or controversy with Contractor, another subcontractor or other third party involved with the project. Subcontractor shall not cause or permit any delay or cessation of its work or cause delay or disruption to the work of any other subcontractor or Contractor on the project, but shall proceed with performance of its work pending resolution of such dispute or controversy. Contractor shall continue to make payments in accordance with the Subcontract.

8.19 Force Account Work – When directed in writing by Contractor, Subcontractor shall perform such additional work as directed by Contractor and Contractor shall pay to Subcontractor the actual costs of such directed work plus Subcontractor's overhead and profit at a combined rate of 15% of such actual costs. This provision shall not apply to Owner directed force account work or disputed work.

8.20 Workers – Contractor may order the removal from the job of any workers Contractor reasonably finds disruptive, incompetent, in violation of safety requirements/programs or otherwise detrimental to the successful completion of the project.

8.21 Contractor Expending Money – Whenever any money is expended or costs or expenses are incurred by Contractor on behalf of or on account of Subcontractor, which amounts Subcontractor should have paid, and for which amounts Subcontractor is required to reimburse Contractor, or if Contractor continues or completes the work after default by Subcontractor, Subcontractor shall pay to Contractor interest at the rate of 10% per annum from the time said money is expended or said costs or expenses are incurred until those amounts are repaid to Contractor by Subcontractor. Nothing contained in this provision or Subcontract shall be construed as requiring Contractor to make any such expenditure, advance any such money, or incur any such expenses. In the event that the balance of the monies due pursuant to this Subcontract are insufficient to cover Contractor's damages or exposure, then Contractor shall have the right to offset against monies owed Subcontractor on other projects, if any.

8.22 Protection of the Work – Subcontractor shall secure and protect the work done pursuant to this Subcontract until final acceptance by Contractor and owner.

## ARTICLE 9

## LABOR RELATIONS

9.1 General Provisions – Employment of labor by Subcontractor shall be effected under conditions which are satisfactory to Contractor. Subcontractor shall keep a representative at the job site during all times when Subcontractor's work is in progress and such representative shall be

Initials HAR Const., Inc. SD Const. Welding

authorized to represent Subcontractor as to all phases of the work. Prior to commencement of the work, Subcontractor shall notify Contractor in writing who Subcontractor's representative is to be, and in the event of any change of representative Subcontractor shall notify Contractor who the new representative is to be prior to such change becoming effective.

9.1.1 Subcontractor acknowledges that Contractor has entered into labor agreements covering work at its construction job sites with the following labor unions:
NONE

If requested by Subcontractor, Contractor shall provide copies of all such labor agreements to Subcontractor. Subcontractor agrees to comply with all of the terms and conditions of those labor agreements set forth above. Subcontractor agrees, at its' own expense, upon request of Contractor, to take all lawful steps to secure a binding and final determination of any jurisdictional dispute by the National Labor Relations Board.

9.1.2 Subcontractor will require all of its subcontractors and their subcontractors performing job site work to comply with the labor agreements specified above, and labor agreements which are binding upon them.

9.1.3 Subcontractor will indemnify and hold Contractor harmless from and against any liability, loss, damage, cost, claims, awards, judgments, fines, expenses, including litigation expenses, reasonable attorneys' fees and any other costs which may be incurred by Contractor resulting from Subcontractor's failure to comply with the above requirements.

9.2 Reserved Gate Usage – Subcontractor shall notify in writing and assign its employees, materialmen and suppliers to such gates or entrances as may be established for their use by Contractor and in accordance with such conditions and at such times as may be imposed by Contractor. Strict compliance with Contractor's gate usage procedures shall be required by Subcontractor who shall be responsible for such gate usage by its employees, materialmen, suppliers, subcontractors, and their materialmen and suppliers.

9.3 Staggered Days and Hours of Work and for Deliveries – Subcontractor shall schedule the work and the presence of its employees at the job site and any deliveries of supplies or materials by its materialmen and suppliers to the job site on such days, and such times and during such hours, as may be directed by Contractor. Subcontractor shall assume responsibility for such schedule compliance not only for its employees but also for all its materialmen, suppliers and subcontractors, and their materialmen and suppliers.

9.4 Work Stoppages – Work stoppages (including sympathy strikes) or any other stoppage of work by employees performing work on, or delivering supplies or materials to, the job site shall not excuse any delay of Subcontractor in the proper performance of its work, regardless of whether the strike or other stoppage of work is attributed to union action or the action of an individual employee.

9.5 Default – Should Subcontractor default in the proper performance of its work, for reasons specified in this provision, Contractor may, as its option, terminate the Subcontract for cause in accordance with the termination for cause provision.

## ARTICLE 10

INSURANCE

10.1 Subcontractor's Insurance – Prior to start of its work, Subcontractor shall procure for its work and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, Comprehensive Automobile Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and any other insurance required of Subcontractor by the Subcontract Documents. Contractor shall be named as additional insured on each of these policies except for Workers' Compensation. Subcontractor shall also name as additional insured all other parties identified in the Contract to be so named. Subcontractor's insurance shall include contractual liability insurance covering Subcontractor's obligations under the Subcontract, including all indemnification provisions included in the Subcontract. Subcontractor shall provide completed operations coverage and maintain the same in full force for the duration of Subcontractor's work.

10.2 Minimum Limits of Liability - Subcontractor's Comprehensive or Commercial General Liability Insurance and Comprehensive Automobile Liability Insurance shall be written with limits of liability which meet the requirements set forth in the Contract, but at a minimum are not less than the following:

Refer to Project Specification Section 01310 paragraph 1.5

10.3 Cancellation, Renewal or Modification – Subcontractor shall maintain in effect all insurance coverage required under the Subcontract at Subcontractor's sole expense and with insurance companies rated as required by Owner but no less than a Best rating of A- or better. All insurance policies shall contain a provision that the coverage afforded shall not be canceled or not renewed nor restrictive modifications added, until at least thirty (30) calendar days' prior written notice has been given to Contractor. Certificates of Insurance and additional insured endorsements shall be filed with Contractor prior to the commencement of Subcontractor's work. In the event Subcontractor fails to obtain or maintain any insurance coverage required under the Subcontract, Contractor may purchase such coverage and charge its expense to Subcontractor, or terminate the Subcontract for cause in accordance with the termination for cause provision of the Subcontract.

10.4 Builders Risk Insurance – Builder's Risk Insurance

☐ Is provided by Contractor ☐ Is provided by Owner ☒ Is not provided by Contractor or Owner

If Builder's Risk Insurance is provided by Contractor or Owner, upon written request by Subcontractor, Contractor shall provide Subcontractor with a copy of the Builder's Risk policy of insurance.

10.4.1 If Builder's Risk Insurance is provided by Owner or Contractor, then Contractor and Subcontractor waive all rights against each other and Owner, Architect, Architect's consultants and agents or employees of any of them, separate contractors, and all other subcontractors for loss or damage to the extent covered by Builder's Risk, except such rights as they may have to the proceeds of such insurance. However, this waiver shall not extend to the acts or omissions of Architect, Architect's consultants, and the agents or employees of any of them.

10.5 Endorsement – If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

2-7

Initials HAR Const., Inc. SD Const. Welding

ARTICLE 11

INDEMNIFICATION

11.1 General Indemnity – All work covered by the Subcontract done at the site of construction or in preparing or delivering materials or equipment, or any or all of them, to or from the site shall be at the risk of Subcontractor exclusively. To the fullest extent permitted by law, Subcontractor shall, with respect to all work which is covered by or incidental to the Subcontract, indemnify, hold harmless and defend Contractor from and against any and all allegations, losses, claims, actions, demands, damages, liabilities, or expenses (including costs, expenses and attorney's fees), arising from or relating to the death or bodily injury to persons, injury to property, design defect (if design originated by Subcontractor), or other loss, damage or expense. Subcontractor's duty to indemnify shall include all damages caused or alleged to be caused in whole or in part by any negligent act or omission, whether active or passive, of: (a) Subcontractor; (b) anyone directly or indirectly employed by Subcontractor; (c) anyone for whose acts Subcontractor may be liable; or (d) Contractor. Subcontractor shall not be obligated to indemnify Contractor with respect to the sole negligence or willful misconduct of Contractor, its agents, servants or subcontractors who are directly responsible to Contractor, excluding Subcontractor.

11.1.1 However, if Owner does not require Contractor to provide a Type I indemnity to Owner (i.e., only Owner's sole negligence and willful misconduct are excluded from the indemnity), paragraph 11.1 shall not apply and Subcontractor's indemnity to Contractor shall be the same indemnity Contractor is required to provide to Owner. In such event, Subcontractor agrees to Owner's indemnity provision with the substitutions of "Contractor" for "Owner" and "Subcontractor" for "Contractor".

11.2 Indemnification for Noncompliance With Laws – Subcontractor shall fully indemnify and hold Contractor harmless from all loss, costs and expenses attributable to any acts or omissions by Subcontractor which constitute a failure to comply with any laws, rules, ordinances and/or regulations of any governmental entity or agency.

11.3 Patents – Subcontractor shall pay all royalties and license fees that may be due on the inclusion of any patented materials in Subcontractor's work. Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of Subcontractor's work, which may be brought against Contractor or Owner, and shall be liable to Contractor and Owner for all loss, including all cost, expenses and attorneys' fees in any such suit.

ARTICLE 12

CHANGES

12.1 Performance – Subcontractor shall proceed with all written directions issued by Contractor so as not to delay the work. Subcontractor shall adhere strictly to the Subcontract Documents unless directed otherwise in writing. Subcontractor shall not make any changes to the work set forth in the Subcontract Documents, either as additions or deletions, without the written direction of Contractor.

12.2 Incorporating Changes – All provisions of this Subcontract shall apply to any changes or extras in a like manner and to the same extent as though said changes or extras were incorporated in the Subcontract.

12.3 Notification of Additional Costs or Time – Subcontractor shall immediately provide written notification to contractor if a written direction could result in additional costs or time of performance so that Contractor has sufficient time to take actions to minimize any additional costs or time, and has sufficient time to provide notification to Owner in accordance with the Contract

12.4 Submission of Cost Proposals and Requests For Time Extensions – Subcontractor shall submit its cost proposal(s) in sufficient time for Contractor to comply with any submission requirements of Owner. All such cost proposals shall itemize, in a form acceptable to Contractor, any change in costs or time for performance which result from any written direction issued by Contractor.

12.5 Cost Proposal Negotiations - At Subcontractor's request, it shall be invited to attend and participate in all negotiations with Owner or others that relate to settlement or resolution of its cost proposals. At Contractor's request, Subcontractor shall attend and participate in negotiations with Owner or others that relate to settlement or resolution of Subcontractor's cost proposals.

ARTICLE 13

DELAYS

13.1 Excusable delays – An excusable delay is one which is caused by circumstances or events beyond the control and without the fault or negligence of Contractor or Subcontractor, and which is recognized by the Contract as "excusable," that is, a delay for which the contract time is extended by for which no compensation is allowed. To the extent excusable delays occur and affect Contractor's and/or Subcontractor's ability to complete their work in accordance with the updated progress schedule, the affected party's time for performance shall be extended, but only to the extent such extensions are allowed by Owner.

13.2 Subcontractor Caused Delays – Subcontractor caused delays are delays caused by the failure of Subcontractor, or any party for which Subcontractor is responsible, to perform any portion its work in accordance with the updated progress schedule. If Subcontractor delays cause delay and/or disruption to the Contract work, Subcontractor shall be liable for all costs and damages sustained by Contractor or for which Contractor may be liable to Owner or any other party, including consequential damages and liquidated damages. If Subcontractor delays are only one of multiple causes for delay to the Contract work, Subcontractor shall only be liable for its proportionate share of any resulting damages.

13.3 Contractor Caused Delays – Contractor caused delays are delays caused by the failure of Contractor, or any party for which Contractor is responsible, to perform any portion its work in accordance with the updated progress schedule. If Contractor delays cause delay and/or disruption to Subcontractor's work, Contractor shall be liable for all costs and damages sustained by Subcontractor, or for which Subcontractor may be liable to any other party, including consequential damages. If Contractor delays are only one of multiple causes for delay to Subcontractor's work, Contractor shall only be liable for its proportionate share of any resulting damages.

13.4 Concurrent Delays – Concurrent delays are delays that can be attributed to either: (a) excusable delays and Subcontractor caused delays occurring concurrently; or (b) excusable delays and Contractor caused delays occurring concurrently. To the extent any portion of a delay is concurrent delay, and affects Contractor's and/or Subcontractor's ability to complete its work in accordance with the updated progress schedule, the period of performance shall be extended but neither Contractor nor Subcontractor shall be entitled to recover any costs or damages.

13.5 Disputed Delays – If Subcontractor disputes the determination of the cause of any delay and wishes to pursue that dispute, it must comply with the Claims article of the Subcontract.

2-8

Initials HAR Const., Inc. SD Const. Welding

## ARTICLE 14

CLAIMS

14.1 Claim – A claim is a written demand by Subcontractor seeking an adjustment in the Subcontract Price and/or time, or the recovery of withheld disputed funds.

14.2 Notification of Claims – Subcontractor shall immediately provide written notification to Contractor of any claims so that Contractor has sufficient time to take actions to minimize any additional costs or time, and has sufficient time to provide notification to Owner in accordance with the Contract.

14.3 Submission of Claims – Subcontractor shall submit its claims in sufficient time for Contractor to comply with any submission requirements of Owner. All such claims shall itemize, in a form acceptable to Contractor, any additional costs or time for performance being sought by Subcontractor.

14.4 Claims with Owner – To the extent Contractor determines Subcontractor's claim is one for which Owner may be liable, the following procedure shall apply: **(a)** Contractor will present Subcontractor's claim to Owner's first level designated representative. The decision of such representative will be conveyed in writing to Subcontractor and such decision shall be final unless Subcontractor notifies Contractor in writing of its desire to proceed further in sufficient time for Contractor to comply with any notification or submission requirement to Owner. **(b)** Upon receipt of Subcontractor's notice to proceed further, at Contractor's option, Subcontractor's claim may be further pursued with Owner. In such event, Contractor may allow Subcontractor to act in its own behalf and with its own consultants/attorneys at Subcontractor's cost to continue the required process and any subsequent administrative proceeding or litigation. If Contractor does not allow Subcontractor to act in its own behalf or it is procedurally impermissible for Subcontractor to proceed in its own behalf, and Contractor elects to allow the continued pursuit of Subcontractor's claim, then at the written request of Subcontractor, Contractor will proceed with the dispute on condition that Subcontractor pay to Contractor all of its actual costs arising out of such process, including but not limited to attorneys' fees, court costs and the costs of Contractor's personnel employed in pursuing the case against Owner. **(c)** If Contractor elects to not allow further pursuit of Subcontractor's claim against Owner, and Subcontractor disputes such decision, Subcontractor may pursue its claim pursuant to the Disputes Resolution Article of the Subcontract. **(d)** Nothing shall prevent Contractor from accepting a contract modification from Owner which preserves the rights of Subcontractor. **(e)** If because of Subcontractor's claim, Owner withholds any sums due Contractor, then Subcontractor shall pay to Contractor interest on the amounts so withheld at the rate of 10 percent per annum. If Owner withholds sums due Subcontractor as a result of a claim of Contractor, Contractor shall pay to Subcontractor interest on the amounts so withheld at the rate of 10 percent per annum.

## ARTICLE 15

DISPUTES RESOLUTION

15.1 Claims Not Involving Owner – To the extent Subcontractor submits a claim which Contractor determines is one for which Owner may not be liable, or is one which Contractor elects to not allow Subcontractor to further pursue with Owner, or to the extent Contractor has a claim against Subcontractor, the following procedures shall apply and begin within sixty (60) days of notification: (a) If the dispute cannot be settled through direct discussions, the parties shall attempt to settle the dispute by mediation before recourse to any other method of dispute resolution. Unless the parties agree otherwise, the mediation shall be conducted in accordance with the Construction Mediation Rules of the American Arbitration Association. (b) If mediation does not resolve the dispute, then the parties may agree to resolve the dispute through binding arbitration. If so, the arbitrator(s)' decision shall be enforceable in a court of law and judgment shall be entered in accordance with such decision. (c) If mediation does not resolve the dispute and the parties do not agree to resolution by binding arbitration, either party may proceed with any allowable resolution process.

15.2 Participation In Proceedings – If Contractor receives a claim from any other party and Contractor determines Subcontractor may be liable, in whole or in part, for such claim, Subcontractor shall participate in the disputes resolution process with Contractor and such other party. To the extent practical, Contractor will not agree to binding arbitration or any other form of resolution with the other party without Subcontractor's consent. If, however, Contractor could not have determined, by reasonable diligence, that Subcontractor may be liable for the other party's claim before binding arbitration or any other form of resolution was already agreed upon, Subcontractor shall participate in that arbitration or other form of resolution and shall be bound by the decision rendered in that proceeding.

## ARTICLE 16

PAYMENT

16.1 Schedule of Values – Within ten (10) days of Contractor's request, Subcontractor shall prepare and submit to Contractor a Schedule of Values which breaks down Subcontractor's work into individual activities. Each activity contained in the Schedule of Values shall be assigned a monetary price such that the total of all such items shall equal the Subcontract Price. The Schedule of Values shall be prepared in such detail as may be required by Owner and/or Contractor.

16.2 Payment and Verification – Subcontractor is required to pay for all labor, materials and equipment used in the performance of Subcontractor's work through the most current period applicable to progress payments received from Contractor. Contractor may require reasonable evidence to show that all obligations relating to Subcontractor's work are current through all payments received from Contractor before releasing any payment due for Subcontractor's work.

16.3 Progress Payment Applications – Subcontractor's applications for payment shall be itemized and in accordance with Subcontractor's Schedule of Values and any other substantiating data as required in the Contract for Contractor's payment applications. Subcontract payment applications may include amounts for Subcontract change orders which have been fully executed by Subcontractor and Contractor. Subcontractor cannot include in its payment applications any amounts for changes which have not been fully executed by Subcontractor and Contractor, or for disputed work.

16.4 Stored Materials and Equipment – If allowed by Owner, applications for payment may include materials and equipment not incorporated into Subcontractor's work but suitably stored on or off the site. Approval of payment applications for materials and equipment stored on or off the site shall be conditioned on: (1) submission by Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to Owner and Contractor to establish the proper valuation and protection of the stored materials and equipment; (2) Owner's and/or Contractor's

2-9

Initials HAR Const., Inc. SD Const. Welding

title to such materials and equipment; and (3) any other documents or procedures to protect Owner's and Contractor's interests, including during the transportation of such items to the site by Subcontractor.

16.5 Time for Submission of Application – Subcontractor's progress payment application shall be submitted to Contractor in sufficient time for Contractor to include it in Contractor's payment request to Owner. Contractor shall incorporate the amount of Subcontractor's progress payment application approved by Owner into Contractor's payment application to Owner for the same period and timely submit it to Owner. If requested by Subcontractor, Contractor shall inform Subcontractor of Owner's changes to Subcontractor's percentages of completion reflected on Subcontractor's payment application and/or other adjustments affecting Subcontractor.

16.6 Copy of Payment Request – Upon written request, Contractor shall give Subcontractor a copy of that portion of Contractor's most current application for payment reflecting the percentages approved and/or paid by Owner for Subcontractor's work performed to date.

16.7 Lien Waivers – Subcontractor shall provide, in a form satisfactory to Owner and Contractor, lien or claim waivers in the amount of the application for payment from Subcontractor, and its subcontractors, materialmen and suppliers for the completed work. Contractor may refuse to pay Subcontractor if Subcontractor fails to provide such waivers. If such waivers are conditional upon payment, Contractor may choose to make payment by issuance of joint checks to Subcontractor and its subcontractors, materialmen and suppliers. Subcontractor shall not be required to sign an unconditional waiver of lien or claim prior to receiving payment, or in an amount in excess of what it has been paid.

16.8 Application Reduction, Rejection or Nullification – Contractor may reduce or reject a Subcontractor payment application or nullify a previously approved Subcontractor payment application, in whole or in part, as may reasonably be necessary to protect Contractor from loss or damage based upon: (a) Subcontractor's failure to perform its work as required by the Subcontract Documents: (b) Loss or damage to Owner, Contractor or others to whom Contractor may be liable arising out of or relating to the Subcontract and caused by Subcontractor or its lower tier subcontractors or suppliers; (c) Subcontractor's failure to properly pay for labor, materials, equipment or supplies furnished in connection with its work; (d) Rejected, nonconforming or defective work which has not been corrected; (e) Reasonable evidence of delay in performance of Subcontractor's work such that the work will not be completed within the time allotted by the updated progress schedule, and that the unpaid balance of the Subcontract Price is insufficient to offset the liquidated damages or actual damages that may be sustained by Contractor as a result of the anticipated delay caused by Subcontractor; (f) Reasonable evidence demonstrating that the unpaid balance of the Subcontract Price is insufficient to cover the cost to complete Subcontractor's work; (g) Third party claims against Subcontractor or reasonable evidence demonstrating that third party claims are likely to be filed. Subcontractor can eliminate this basis by furnishing Contractor with adequate security in the form of a surety bond, letter of credit or other collateral or commitment which is sufficient to discharge such claims if established; (h) Owner's reduction, rejection or nullification of any part of a payment application; or (i) Any other failure to comply with the terms and conditions of the Subcontract Documents.

Contractor shall give written notice to Subcontractor, at the time of reducing disapproving or nullifying an application for payment, of the specific reasons for Contractor's action. When the above reasons for reducing, disapproving or nullifying an application for payment are removed, payment will be made for amounts previously withheld.

16.9 Retention - Contractor may withhold from Subcontractor retention up to a rate of ten (10) percent, or as provided by law.

16.10 Payment Not Acceptance – Payment to Subcontractor does not constitute or imply acceptance of any portion of Subcontractor's work.

16.11 Final Payment Application – Contractor is required to incorporate Subcontractor's application for final payment into contractor's next application for payment to the Owner only after the following occur: (a) acceptance of Subcontractor's work by Contractor and Owner; (b) if requested by Contractor, evidence acceptable to Contractor that all payrolls, bills for materials and equipment, and other indebtedness connected with Subcontractor's work have been fully paid, or will be fully paid by issuance of joint checks in return for unconditional releases; (c) if requested by Contractor, consent of Subcontractor's surety to final payment; (d) satisfaction of close-out procedures as may be required by the Subcontract Documents; and (e) if requested by Contractor, releases and waivers of liens, stop notices, bond rights, or any rights against Contractor, its surety or Owner, effective upon payment, to the extent and in such form as may be designated by Contractor.

16.12 Effect of Final Payment – Acceptance of final payment by Subcontractor shall constitute a waiver of claims by Subcontractor, except for claims reserved in a final release.

## ARTICLE 17

RECOURSE BY CONTRACTOR

17.1 Failure of Performance – If Subcontractor refuses or fails to fully and timely perform its obligations pursuant to the Subcontract, Contractor may, after two (2) working days written notice to Subcontractor, commence and continue satisfactory correction of such failure, and without prejudice to any other rights or remedies, provide the most expeditious correction of the failure by whatever means Contractor deems appropriate and charge the resulting costs to Subcontractor. A failure to fully and timely perform shall include but not be limited to, failing to supply enough properly skilled workers or proper materials, failing to maintain performance in accordance with the updated progress schedule, failing to make prompt payment to its workers, subcontractors or suppliers, disregarding laws, ordinances, rules, regulations or orders of any authority having jurisdiction, or otherwise failing or refusing to comply with any provision of the Subcontract. In the event of an emergency affecting the safety of persons or property, Contractor may proceed to commence and continue satisfactory correction of such failure without first giving two (2) working days' written notice to Subcontractor, but shall give prompt written notice of such action to Subcontractor.

## ARTICLE 18

TERMINATION

18.1 Termination For Cause – If Subcontractor fails to perform any of its Subcontract obligations, Contractor may, after seven (7) calendar days written notification and in lieu of or in addition to any other remedies, terminate the Subcontract. Contractor shall issue a separate written notice of termination to Subcontractor at the time the Subcontract is terminated. If such a termination occurs, Contractor shall have the right to take and use any materials, equipment, appliances or tools furnished by, belonging or delivered to Subcontractor and located at the project for the purpose of completing any remaining Subcontractor work.

In the event the Subcontract is terminated for cause, Subcontractor shall not be entitled to receive any further payment until the Contract work is completed. At that time, if the amounts earned but not paid Subcontractor before the termination exceed the expenses incurred by Contractor in completing Subcontractor's work, any excess shall be paid by Contractor to Subcontractor; but, if Contractor's expense to complete Subcon-

Initials [signature] HAR Const., Inc. [signature] SD Const. Welding

tractor's work exceeds the amount earned and unpaid, Subcontractor shall promptly pay the excess amount to Contractor. The expense incurred by Contractor shall include Contractor's costs for completing the work, including overhead, profit and attorneys' fees, and any damages incurred by Contractor by reason of Subcontractor's default.

18.2 Termination By Owner – If Owner terminates the Contract, or any part which includes portions of Subcontractor's work, Contractor shall notify Subcontractor in writing and Subcontractor shall immediately stop the performance of the terminated work, follow Contractor's instructions regarding any shutdown and termination procedures, and mitigate all costs. If Owner's termination partially eliminates Subcontractor's work, Contractor may terminate the Subcontract in its entirety.

18.2.1 Contractor's liability to Subcontractor for any damages incurred or claims resulting from owner termination for convenience shall be limited to the amount Owner is determined to be liable to Contractor for Subcontractor's damages. Contractor's liability to Subcontractor for Owner's termination for cause shall be determined pursuant to the Claims and Disputes Resolution Articles of the Subcontract.

## ARTICLE 19

### SUSPENSION OF WORK

19.1 Contractor may order Subcontractor in writing to suspend all or any part of Subcontractor's work for such period of time as Contractor deems appropriate. Contractor's liability to Subcontractor for any delay or disruption resulting from such suspension shall be determined pursuant to the Claims and Disputes Resolution Articles of the Subcontract. If the suspension is directed or caused by Owner, Contractor's liability to Subcontractor shall be limited to the amount Owner is determined to be liable to Contractor for Subcontractor's damages.

## ARTICLE 20

### ASSIGNMENT OF SUBCONTRACT

20.1 Subcontractor shall not, without written consent of Contractor, assign its rights in the Subcontract to others. Contractor may assign this Subcontract to its bonding company.

2-11

*Initials* HAR Const., Inc. SD Const. Welding

SUBCONTRACT NO. CBC-SUB00003

SUBCONTRACT

SIGNATURE PAGE

Contractors are required by law to be licensed and regulated by the Contractors' State License Board which has jurisdiction to investigate complaints against contractors if a complaint regarding a patent act or omission is filled within four years of the date of the alleged violation. A complaint regarding a latent act or omission pertaining to structural defects must be filed within ten (10) years of the date of the alleged violation. Any questions concerning a contractor may be referred to the Registrar, Contractors' State License Board, Post Office Box 26000, Sacramento, California 95826.

Representation By Contractor

Contractor represents to Subcontractor that this Subcontract is the "Long Form Subcontract Between General Contractor and Subcontractor" which was developed by The Associated General Contractors of America, San Diego Chapter, Inc. Neither Contractor nor Subcontractor has modified the printed language of the standard form agreement except by strikeouts, interlineations or the like which have been initialed by both parties, or by attachments which are identified and attached. Contractor and Subcontractor may rely on all other printed portions of the Subcontract as being unaltered from the form contract published by AGC San Diego. Any change to the printed language which was not initialed by both parties or set forth in an attachment shall have no force and effect on either party or both parties shall instead be bound by the unaltered printed language. This provision does not apply to the language which must be inserted into the blank spaces or to the blocks which must be checked. Those items need not be initialed by the parties.

Representation By Subcontractor

Subcontractor warrants that it is properly licensed by the Contractors' State License Board of the State of California with the proper license classifications for performance of its work. Subcontractor further warrants that its license is and will remain current, active and in good standing all times during performance of its work.

**This Subcontract has important legal and insurance consequences. Consultation with an attorney and insurance consultant is encouraged with respect to its completion or modification.**

The parties have executed this Subcontract for themselves, their heirs, executors, successors, administrators and assigns at the place and on the day and year first written above.

*CONTRACTOR*
HAR Construction, Inc.
3103 Market Street
San Diego, CA 92102-3231

By
Hector Romero, CEO

CA Contractor's License #616047

SIGN HERE

*SUBCONTRACTOR*
San Diego Construction Welding
1167 Sweetwater Lane
Spring Valley, CA 91977

By
Ronald Julian Chavez, Sole Owner

CA Contractor's License #586353
Federal I.D. # 33-0182209
State of Incorporation CA

(Corporate Seal)

(Corporate Seal)

*Initials*

HAR Const., Inc. SD Const. Welding

RECEIVED 02/24/2007
RECEIVED 02/24/2007

Dec 04 06 04:32p H Construction, Inc. (619) 5-6914 p.2

# SUBCONTRACTOR
# CHANGE ORDER




HAR CONSTRUCTION, INC.
3103 Market Street
San Diego, CA 92102-3221
Phone (619) 325-5985
Fax (619) 325-6914

Change Order Number: 01

Change Order Date: November 30, 2006

Subcontract# CBC-SUB00003

Page: 1 of 1

TO: San Diego Construction Welding
1167 Sweetwater Lane
Spring Valley, CA 91977
Tel: 619-462-9087
Fax: 619-698-9435

Contract No. # N68711-02-D-8053-T.O.0006
Project Name P-613 Close Combat Battle Course
MCB Camp Pendleton, CA

| Item# | DESCRIPTION | AMOUNT |
|---|---|---|
| 1 | Fabricate and install sixty (60) pieces of 2x3 4ft long angle nose inbeds | $1,800.00 |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| | *All Terms and Conditions of the Original Subcontract Agreement Remain Unchanged. No additional time is granted.* | |

| | |
|---|---|
| **Total Amount of This Change Order** | **$1,800.00** |
| **Total Amount of Previous Change Orders** | **$0.00** |
| **Total Amount of Original Subcontract Agreement** | **$544,000.00** |
| **New Subcontract Amount** | **$545,800.00** |

"PLEASE SIGN AND RETURN ASAP"

Signed: [signature]
Name: Hector M. Romero
Title: President
Date: November 30, 2006

Terms Accepted by: [signature]
Title: Office Manager
Company: San Diego Const. Welding
Date: 12-4-2006

2-15

RECEIVED 02/24/ 22:21
RECEIVED 02/24/2007

Dec 04 06 04:32p H Construction, Inc. (619) 325-5814 p.3

# SUBCONTRACTOR CHANGE ORDER

**HAR CONSTRUCTION, INC.**
3103 Market Street
San Diego, CA 92102-3231
Phone (619) 325-5555
Fax (619) 325-5814

Change Order Number: 02

Change Order Date: December 4, 2006

Subcontract#: CBC-SUB00003

Page: 1 of 1

TO: San Diego Construction Welding
1167 Sweetwater Lane
Spring Valley, CA 91977
Tel: 619-462-9087
Fax: 619-698-9435

Contract No. # N68711-02-D-8053-T.O.0006
Project Name P-613 Close Combat Battle Course
MCB Camp Pendleton, CA

| Items | DESCRIPTION | AMOUNT |
|---|---|---|
| 1 | Delete Ballistic Protection for High Voltage Transformer. Provide and install Ballistic protection for transformers (8'length x 48" tall x 24" sides) refer to Govn't PC #000001 and PC #000002 dated October 31, 2006. | $9,000.00 |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| | *All Terms and Conditions of the Original Subcontract Agreement Remain Unchanged.* | |

| | |
|---|---|
| Total Amount of This Change Order | $9,000.00 |
| Total Amount of Previous Change Orders | $1,800.00 |
| Total Amount of Original Subcontract Agreement | $544,000.00 |
| New Subcontract Amount | $554,800.00 |

"PLEASE SIGN AND RETURN ASAP"

Signed: [signature]
Name: Hector M. Romero
Title: President
Date: December 4, 2006

Terms Accepted by: [signature]
Title: Office Manager
Company: San Diego Const Welding
Date: 12-4-2006

2-16

**SAN DIEGO CONST. WELDING**
1167 Sweetwater Lane
SPRING VALLEY, CA 91977
**Ph. (619) 462-9087**
**Fax (619) 698-9435**

# JOB WORK ORDER

5224

| DATE OF ORDER | 11-17-06 |
|---|---|
| CUSTOMER'S ORDER NO. | |
| PHONE | |
| MECHANIC | |
| HELPER | |
| STARTING DATE | / / |
| BILL TO | HAR Construction, INC. |
| ORDER TAKEN BY | |
| ADDRESS | |
| CITY | |
| JOB NAME AND LOCATION | PTO-31, Close Combat Battle Course, MCB Camp Pendleton, CA. |
| JOB PHONE | |

☐ DAY WORK
☐ CONTRACT
☒ EXTRA

DESCRIPTION OF WORK

Hand delivered Brackets 30 P.C.

1"
3 1/4"
# 1/16 Thickness
3 1/8"

Detail

IN THE EVENT OF NONPAYMENT CUSTOMER AGREES TO PAY CONTRACTORS ACTUAL ATTORNEY FEES, COSTS, AND EXPENSES INCURRED IN COLLECTING THE AMOUNT DUE REGARDLESS OF WHETHER CONTRACTOR ULTIMATELY SECURES PAYMENT THROUGH NEGOTIATION, MEDIATION, ARBITRATION, AND/OR COURT PROCEEDINGS. CUSTOMER ALSO AGREES TO PAY INTEREST AT 10% ON ALL SUMS DUE CONTRACTOR. TIME IS OF THE ESSENCE.

| | |
|---|---|
| TOTAL MATERIALS | |
| TOTAL LABOR | |
| | |
| TAX | |
| TOTAL AMOUNT | $ |

DATE COMPLETED / /

WORK ORDERED BY

Nov 17-06

Signature [signature]

I hereby acknowledge the satisfactory completion of the above described work

☐ No one home ☐ Total amount due for above work: or ☐ Total billing to be mailed after completion of work

2-17

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED 08 JAN 17 PM 2:28 CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA BY: DEPUTY

**I. (a) PLAINTIFFS**

United States of America for the Use and Benefit of RON CHAVEZ, D.B.A. SAN DIEGO CONSTRUCTION WELDING

**(b)** County of Residence of First Listed Plaintiff: San Diego, CA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of Cary Richard Bond, A Prof. Corp.
501 W. Broadway, Suite 1660, San Diego, CA 92101 619.230.8700

**DEFENDANTS**

INSURANCE COMPANY OF THE WEST; HAR CONSTRUCTION, INC. and DOES 1 through 10, inclusive

County of Residence of First Listed Defendant: San Diego, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 0097 WQH LSP

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☒ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**): 40 USC Section 270(b)

Brief description of cause: Action against Miller Act Payment Bond

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 112,758.45

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ____ DOCKET NUMBER ____

DATE: 01/17/2008

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # 146544 AMOUNT $350 1/17/08 BH APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 146544 - BH
* * C O P Y * *
January 17, 2008
14:28:46

Civ Fil Non-Pris
USAO #.: 08CV0097 CIVIL FILING
Judge..: WILLIAM Q HAYES
Amount.: $350.00 CK
Check#.: BC# 8829

Total-> $350.00

FROM: CHAVEZ V. INS. CO OF THE WEST
CIVIL FILING